Harold Eugene CURRY, Appellant,

v.

The STATE of Texas, State.

No. 2–83–362–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 1, 1984.

Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Darrell Adkerson, Asst. Dist. Atty., Fort Worth, for the State.

## OPINION

HILL, Justice.

This is an appeal from a conviction for aggravated robbery. Punishment, enhanced by two prior felony convictions, was assessed by the jury at 90 years imprisonment in the Texas Department of Corrections.

In two grounds of error, Curry contends that the evidence was insufficient to show that the knife displayed in the commission of the offense was a deadly weapon and complains of the trial court's refusal to quash a pretrial identification by the complaining witness.

We affirm.

The indictment in the instant case alleged, in pertinent part, that appellant, while in the course of committing theft, "did then and there use and exhibit a deadly weapon, to-wit: a knife that in the manner of its use and intended use was capable of causing serious bodily injury and death; ..."

The record reflects that on February 4, 1983, Curry entered a convenience store, purchased an item, and returned to his car. Moments later, he again entered the store and presented another item for purchase. At that time, the only persons present in the store were Curry, the clerk (Carol Shetter), and a young boy (John Dollar) who was standing by the counter. After Curry

paid for the second item, the clerk took the change from the register and closed it, but when she attempted to return the change, Curry took a knife from his pocket and ordered her to reopen the register. He said, "I am not going to hurt you; just give me the money." When Curry displayed the knife, Shetter was across the counter from him, a distance of approximately one and one-half to two feet. According to Shetter's testimony, the distance was close enough that Curry could have struck her with the knife. Shetter also testified that although she noticed few details about the knife itself, she was afraid that Curry would hurt her with it. She said she was scared to death. She was five feet one inch tall while the appellant was more than six feet tall.

The evidence showed that when Shetter reopened the register, she immediately backed away from it. At that point, Curry leaned across the counter and removed the money from the register. According to Shetter's testimony, Curry held the knife in one hand while he took the money out of the register with his other hand. He held the knife up where it could be seen. He never went toward the clerk with it. After he had taken the money, Curry warned Shetter and Dollar not to move, and then left the store. A security camera took a picture of the appellant as he left the store with the knife still in his hand.

Curry was arrested several days after this incident. Two knives, confiscated from the trunk of the automobile Curry was driving at the time of his arrest, were admitted into evidence at the trial. One of the knives appeared to be a "steak knife" and the other a "pocket knife."

At issue is whether the evidence is sufficient to establish that the appellant committed aggravated robbery.

TEX.PENAL CODE ANN. § 29.03 (Vernon 1974) defines "aggravated robbery" as follows:

(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he:

(1) causes serious bodily injury to another; or

(2) uses or exhibits a deadly weapon.

The definition of "deadly weapon" is contained in TEX.PENAL CODE ANN. § 1.07 (Vernon 1974):

(11) "Deadly weapon" means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

A knife is not a deadly weapon per se. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983). The State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape, and sharpness, the manner of its use, or intended use, and its capacity to produce death or serious bodily injury. *Blain v. State, supra.* In determining the deadliness of a weapon, the jury may consider all of the facts of a case, including words spoken by the accused. *Blain v. State, supra.*

In the instant case, there were no injuries. The knife was used to carry out a robbery. The appellant held the knife up so that it could be seen by his victim. The knife blade was at least three inches long. A picture of the knife was taken at the time of the robbery by the store security camera. The knife in the picture appears to have a blade longer than three inches. In any event, the blade of the knife in the picture appears to be long and it appears to be sharp. The appellant threatened the victim when he pulled out his knife and said, "I am not going to hurt you; just give me the money." His statement carried the implied threat that if she did not give him the money that he *would* hurt her. As already noted, the appellant was much larger than the victim in that he was six feet tall or more, whereas she was only five feet one inch tall. He was in close physical proximity to her, so that he could have carried out his threat.

The real question at issue is whether, in the absence of expert testimony, a knife can be a deadly weapon in the absence of its actual use, either in terms of a wound to the victim or being placed next to the neck or side of the victim.

Expert testimony is not essential to establish that a knife is a deadly weapon, *Denham v. State*, 574 S.W.2d 129, 131 (Tex.Crim.App.1978), nor must wounds be inflicted before a knife can be determined to be a deadly weapon. *Denham v. State, supra.* It is also apparent from the penal code that the actual use of the knife is not necessary to support a finding that it is a deadly weapon. Section 29.03, in setting forth the elements of aggravated robbery, refers to one who uses or *exhibits* a deadly weapon. The definition of deadly weapon refers to the use or *intended use* of the weapon.

We hold that the factors in this robbery, such as the disparity in size of the appellant and the victim, the threat made by the appellant, coupled with the fact that he was carrying the long, sharp knife exhibited in the photograph and was close enough to the victim to use it, constitute sufficient evidence to establish that the knife by its use or *intended* use was capable of causing death or serious bodily injury and was therefore a deadly weapon.

The appellant, in asserting that the evidence is insufficient to establish that the knife is a deadly weapon, relies on the cases of *Ammann v. State*, 145 Tex.Cr.R. 34, 165 S.W.2d 744 (1942); *Davidson v. State*, 602 S.W.2d 272 (Tex.Cr.App.1980); *Alvarez v. State*, 566 S.W.2d 612 (Tex.Cr.App.1978); and *Harris v. State*, 562 S.W.2d 463 (Tex.Cr.App.1978).

The case of *Ammann v. State, supra* involved a prosecution for assault with intent to murder, not aggravated robbery. The defendant in that case cut the victim with a knife, wounding him from the eighth rib on the left side to three inches above his navel. A doctor testified that death would have resulted if the wound had not been treated. The knife was a small pocketknife

of two blades, one of which was two inches long, while the other was one and one-half inches in length. The court held that this evidence was insufficient to establish an intent to kill. In the instant case, the State was not required to prove an intent to kill. The knife in the present case is long and sharp, compared to the small knife used in *Ammann*. Finally, we do not have in this case unanswered expert testimony contradicting the State's theory of the case.

In *Davidson v. State, supra*, a Safeway clerk followed the defendant out to the parking lot. The defendant pulled a knife on him while he was about five or six feet away. He never got any closer. The knife had a blade of two and one-half to three inches, and the knife was not in evidence. In the instant case, the appellant was close enough to the victim to have used the knife and carried out his threat. The knife in this case is in evidence by way of a photograph, and although the testimony of the witness was that the blade was three inches long, the blade in the picture appears to be longer than three inches.

*Alvarez v. State, supra* was an appeal from a conviction for aggravated assault with a deadly weapon. Early on May 15, 1975, a San Antonio police officer tried to break up a fight. He shouted for everyone to drop the weapons they were using. Everyone did but the defendant, who was carrying a wooden-handled hook-type linoleum knife. When he failed to comply, the officer pulled out his service revolver. At that time the defendant was five feet away. The defendant started toward the officer with the knife. As the defendant advanced toward the officer, the officer yielded ground but continued to order him to drop the knife. When the defendant got within three to four feet of the officer, he made a swing at the officer with the knife. The officer shot him in the leg. The defendant continued to advance toward the officer, who finally pointed his revolver directly at the defendant and told him to drop the knife or "I'm going to have to kill you." The defendant then started to back away from the officer. The officer advanced on the defendant until he dropped the knife

and fell down. The officer testified at trial that the knife looked sharp, but the knife was not in evidence. There was no testimony as to the size of the knife's blade. Again, in the instant case, the appellant was close enough to the victim to carry out any attack with the knife. Also in the instant case, the long, sharp knife used was before the jury, in the form of a photograph.

In *Harris v. State, supra*, the victim was walking alone on the streets of Dallas, on his way home from a nightclub, when he was accosted by the defendant who stated, "I have a knife and I want your money, your billfold." During a struggle, the victim received cuts on his right elbow, his chin, and under his throat. After the defendant got the billfold, he was arrested as he attempted to flee the scene. A four-inch blade pocketknife was found on the defendant's person. No knife was ever seen during the incident. In the case at bar, the knife used is in evidence before the jury. Also, inasmuch as *Harris* inferred a requirement for expert testimony to establish that a weapon is a deadly weapon, it has been overruled. *See Denham v. State, supra* at 131.

We feel that we should also compare the facts here to those in the recent case of *Tisdale v. State*, —— S.W.2d —— No. 743–83 (Tex.Cr.App., June 6, 1984) (not yet reported), perhaps the most recent expression by the Court of Criminal Appeals on this subject. In that case, the defendant had paid for items at a convenience store. When the cashier opened the register, he placed his hand over the cash tray. The clerk grabbed his hand and said, "No." The defendant, who had a knife in his right hand, replied, "Yes." The clerk felt threatened. The knife used was introduced into evidence. It had a blade length of two and one-fourth inches. No express or implied threat of serious bodily injury was made. In the case at bar, the appellant threatened the victim when he told her, "I am not going to hurt you; just give me the money." The verbal and pictorial descriptions of the knife indicate that the knife in this

case is much larger than the knife used in *Tisdale*. Also, neither in *Tisdale*, nor in any of the other cases cited, is there any reference made to a disparity in size between the defendant and the victim such as the disparity which was shown in this case between the appellant, who was six feet tall or more, and the victim who was only five feet one inch tall.

The jury in this case heard the facts of the robbery including the threat made by the appellant; they personally observed the disparity in size between the two; and they were able to see the picture of the knife used in the robbery. We feel that the jury under these facts, without the necessity of expert testimony, can determine that the knife in question, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Appellant's ground of error number one is overruled.

■ We have reviewed the record with respect to the appellant's second ground of error relating to the pretrial identification of Curry by the complaining witness, Shetter. We find the ground of error to be without merit. The photograph spread from which Shetter identified Curry was not, under the totality of the circumstances, so unnecessarily suggestive and conducive to misidentification that it amounted to a denial of due process. *Owens v. State,* 540 S.W.2d 324, 326 (Tex.Cr.App.1976); *Jackson v. State,* 630 S.W.2d 796, 797 (Tex. App.—Houston [1st Dist.] 1982, no pet.). Appellant's second ground of error is overruled.

The judgment is affirmed.

HUGHES, J., dissents with an opinion in which JORDAN, J., joins.

HUGHES, Justice, dissenting.

I respectfully dissent.

In the case before us the State alleged that Curry committed aggravated robbery under TEX.PENAL CODE ANN. § 29.03 (Vernon 1974) by using and exhibiting a deadly weapon, to-wit: a knife. Because a knife is not a deadly weapon per se, *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Cr.App.

1983), the State was obliged to prove that the particular knife exhibited by Curry during the robbery was, in the manner of its use or intended use, capable of causing serious bodily injury or death. *See* TEX. PENAL CODE ANN. § 1.07(a)(11)(B) (Vernon 1974). As noted by the majority, the State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use or intended use, and its capacity to produce death or serious bodily injury. *Tisdale v. State,* —— S.W.2d —— No. 743–83 (Tex.Cr.App., June 6, 1984) (not yet reported).

While there was testimony in this case that the blade of the knife exhibited by Curry was three inches long, the evidence with respect to the manner of the knife's use established that it remained at Curry's side throughout the entire incident. Both Shetter and Dollar testified that Curry never expressly threatened to harm or kill either of them with the knife; never menaced either of them with the knife or waved it around; never struck either of them with it.

Evidence has been held to be sufficient if it is shown that a knife capable of causing serious bodily injury or death is displayed in a manner conveying an *implied* threat of infliction of serious bodily injury or death if the desire of the person displaying the knife was not satisfied. *See Lewis v. State,* 628 S.W.2d 276, 278 (Tex.App.— Amarillo 1982, no pet.). The majority perceives an implied threat of harm in Curry's statement to Shetter, "I am not going to hurt you; just give me the money." However, in *Tisdale, supra,* although the clerk grabbed the appellant's hand saying "no" in an attempt to prevent him from taking the money, and appellant replied "yes" while holding a knife in his hand, the Court of Criminal Appeals held that there was no threat of serious bodily injury, express or implied, made by the appellant. The facts in the case before us do not show either an express or implied threat of serious bodily injury.

Even assuming there was an implicit threat of such injury in this case, the evidence was insufficient to establish that the knife in question *was capable of inflicting serious bodily injury or death.* Two knives were introduced into evidence, a steak knife and a pocketknife, both confiscated from the vehicle in which Curry was arrested. Neither knife, however, was identified as the actual weapon exhibited by Curry during the commission of the robbery. A photograph depicting the weapon was admitted into evidence. However, in *Tisdale, supra,* the evidence was held to be insufficient to show the knife to be a deadly weapon, even where the actual knife was before the jury.

A lay witness is competent to testify to the capacity of a knife to cause serious bodily injury or death. *Denham v. State,* 574 S.W.2d 129, 131 (Tex.Cr.App.1978). However, neither Shetter nor Dollar offered any testimony as to the capacity of the knife displayed to have caused such injury or death. Where there is no lay testimony, or only meager evidence on this point, as in the case before us, expert testimony may be particularly useful in supplementing the evidence to meet the sufficiency requirement. *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Cr.App.1980). No such testimony was offered in this case despite the fact that a police officer took the stand to identify the two knives admitted into evidence.

To hold the evidence before us to be sufficient to show that Curry used or exhibited a *deadly weapon* is tantamount to elevating a knife to the status of a deadly weapon *per se.* According to *Tisdale,* we cannot do this.

JORDAN, J., joins.